**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID LEMBKE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 13 C 5239 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| NEDRA CHANDLER, Warden, | ) | |
| Dixon Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner David Lembke is currently incarcerated at Dixon Correctional Center in Dixon, Illinois. Nedra Chandler, the warden of the facility, has custody of Petitioner. Lembke has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court denies Lembke's [4].

**I.    Background**

   **A.    Underlying Criminal Proceedings**

In October 2007, Petitioner David Lembke was charged in the Circuit Court of Kendall County, Illinois, with six methamphetamine crimes that fell into four different sentencing classes: (1) one count of methamphetamine possession, a Class 3 felony; (2) two counts of methamphetamine delivery and one count of possessing methamphetamine-manufacturing materials, all Class 2 felonies; (3) one count of methamphetamine manufacturing, a Class 1 felony; and (4) one count of aggravated methamphetamine manufacturing, a Class X felony.[1]  At arraignment, Petitioner was admonished that the Class X charge carried an imprisonment term of

---

[1] State-court factual findings are presumed correct and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Carter v. Thompson*, 690 F.3d 837, 839 (7th Cir. 2012), cert. denied, 133 S. Ct. 887 (2013).

six to thirty years; the Class 1 charge carried a term of four to fifteen years imprisonment; and the Class 2 charges carried a term of three to fourteen years each. No range was given for the Class 3 charge.

On March 13, 2008, the parties engaged in plea negotiations pursuant to Illinois Supreme Court Rule 402(d), a rule governing judicial oversight of plea negotiations. The rule permits a judge to "concur" in the parties' "tentative agreement" for a "specified sentence": if an agreement's terms and a judge's concurrence are stated in open court and the defendant pleads guilty, then Rule 402(d)(2) requires the judge either to impose the previously agreed sentence or, if new information changes the judge's mind, to allow the defendant to withdraw the plea. See Ill. S. Ct. R. 402(d)(2)).

At the hearing on March 13, with Petitioner Lembke present, the judge noted that a Rule 402 conference was held with counsel and he asked Petitioner's counsel how he wished to proceed. Petitioner's counsel stated: "Judge, I would ask that you set this * * * for Tuesday, the 18th. I expect that there will be some movement on that. I would ask you to make that a final plea or setting date." The details of the plea offer were not read into the record. The prosecutor stated that the offer would "probably" remain open for a week and then be taken "off the table." The prosecutor also requested, and the judge so advised Petitioner, that on the Class Two felony counts, if Petitioner was found guilty, that he could be sentenced under Class X felony sentencing provisions and receive between six and 30 years, followed by an additional three years of mandatory supervised release or parole. When asked if he understood, Petitioner said, "Yes." The judge then continued the case for five days "for entry of a plea or trial setting."

Five days later, on March 18, 2008, Petitioner's counsel told the court that "everything [had] changed" and that he needed additional time to explain the changes to Petitioner.

2

Approximately one month later, on April 21, 2008, Petitioner pleaded guilty to the Class 3 possession charge and both Class 2 delivery charges. At the hearing, Petitioner stated that no promises had been made in exchange for the plea and also stated that he had discussed the plea with his counsel.

On June 12, 2008, Petitioner pleaded guilty to manufacturing methamphetamine (a Class 1 felony), in exchange for the State's dismissal of the remaining charges (a Class X charge of aggravated manufacturing and Class 2 charge of possessing methamphetamine-manufacturing materials). During the court's admonitions, when the judge noted that the sentencing range was 4-to-15-years incarceration, the State indicated that the offense was subject to an extended term. The court then stated that the range was 4 to 30 years.[2] Petitioner expressed surprising, stating, "I didn't realize that really, I mean—." The court then passed the case to give Petitioner time to confer with counsel. After Petitioner conferred with counsel and the court recalled the case, Petitioner acknowledged that he faced up to 30 years in prison and that he had not been promised anything in exchange for his plea and he proceeded to plead guilty. The court accepted his plea.

In sum, in April and June 2008, Petitioner pleaded guilty to four methamphetamine-related crimes. At sentencing, the trial judge heard testimony that Petitioner manufactured methamphetamine in the presence of his young son. Additionally, despite prior drug convictions and a drug-related parole violation, Petitioner had never obtained treatment for drug use. The judge sentenced Petitioner to twenty years of imprisonment for manufacturing methamphetamine, two concurrent terms of ten years for delivery, a concurrent five-year term for possession, and two years of supervised release.

---

[2] Defendant was eligible to be sentenced to an extended term with a maximum of 30 years because he had been convicted of the same or a greater class felony within the previous 10 years. See 730 ILCS 5/5-5-3.2(b)(1). He also was subject to sentencing as a Class X offender with a maximum of 30 years because he was over 21 years of age and had twice been convicted of a Class 2 or greater felony. See 730 ILCS 5/5-5-3(c)(8).

Petitioner moved to withdraw his pleas and to reconsider his sentence, but the court dismissed these requests when Petitioner's counsel failed to appear for a hearing. Petitioner then obtained new counsel and filed a second motion challenging his pleas as unknowing and his sentence as excessive. At the ensuing evidentiary hearing, Petitioner's original counsel testified that the State made a ten-year offer on March 13, 2008, promised to hold it open for five days, and reneged on March 17 before Petitioner could accept it. According to counsel, Petitioner had not accepted on March 13 because he wished to discuss the offer with his family. The State subsequently approached counsel with a 14-year offer on March 17 (out of court), but Petitioner did not accept. Counsel further testified that when Petitioner entered his first pleas, counsel thought that the judge likely would sentence Petitioner to around 10 years if he had understood the sequence of plea negotiations, but counsel testified that he told Petitioner that he could not "guarantee" it. Petitioner did not testify at the evidentiary hearing, and the Court denied Petitioner's request to withdraw his pleas and reconsider his sentence

### B. Direct Appeal

On direct appeal, Petitioner argued that (1) the judge violated Illinois Supreme Court Rule 402(d)(2) when he failed to abide by the 10-year plea agreement that Petitioner contended was entered on March 13, 2008; (2) that his pleas were unknowing because counsel guaranteed that Petitioner would receive a 10-year sentence; (3) that he was inadequately admonished about the applicable two-year term of supervised release before his pleas were taken; and (4) that his 20-year sentence was excessive.

The Illinois Appellate Court held that no plea agreement was reached in March 2008 and that counsel did not guarantee a ten-year sentence, noting that the record plainly belied Petitioner's contrary assertions. As for the admonitions about supervised release, the court

deemed any error harmless: although Petitioner's April 2008 pleas were not preceded by the appropriate admonishment, the June 2008 plea was, and Petitioner would serve just one term of supervised release for all offenses. The court also rejected Petitioner's sentencing claim.

Petitioner next filed an unsuccessful petition for leave to appeal (PLA) to the Illinois Supreme Court. He renewed his first two claims, but abandoned his challenges to the supervised-release admonishment and "excessive" sentence.

### C. Post-Conviction Review

In June 2011, Petitioner filed a *pro se* post-conviction petition, challenging his original counsel's performance and the validity of his pleas. The petition was not verified under penalty of perjury and included no supporting affidavits. Petitioner did, however, attach the first page of a March 20, 2008 letter from his original counsel. Counsel's letter advised that a co-defendant was planning to testify against Petitioner, going to trial was "not very realistic under the circumstances except for the Class X felony," and pleading guilty to some charges might induce the State to drop the Class X charge. The letter also referred to a new offer (though no details were listed) and expressed counsel's "belief, though by no means a guarantee," that a sentence imposed after a trial or open plea was unlikely to be "much worse" than those proposed in the State's offers—"particularly once [the judge] realizes it is the State who pulled the [ten-year] offer."

The petition was dismissed, and on post-conviction appeal, a newly-appointed lawyer argued that Petitioner's original counsel wrongly failed to admonish Petitioner about the possibility of a thirty-year sentence for his Class 1 offense. According to appellate counsel, had Petitioner known at the March 13 conference that he faced up to thirty years of imprisonment on a Class 1 charge, he would have accepted a 10-year offer immediately rather than taking the

weekend to discuss it with his family. Alternatively, appellate counsel contended that Petitioner at least would have accepted a 14-year offer after the 10-year offer was withdrawn.

The Illinois Appellate Court concluded that Petitioner's claim was defaulted on two grounds. First, the court held that Petitioner failed to raise the claim in his motion to withdraw the guilty pleas, even though he had a new lawyer for that motion. Second, the court held that he did not support his claims with affidavits or explain those affidavits' absence, as required by 725 ILCS 5/122-2. As with his direct appeal, Petitioner filed an unsuccessful PLA to the Illinois Supreme Court.

### D. Petitions for Relief from Judgment

In August 2013, Petitioner filed a *pro se* verified petition for relief from judgment in the circuit court. Although he complained of the prosecutors in his case committing perjury, the main thrust of his petition appears to be that the parties and judge reached a binding agreement on March 13, 2008, to keep a ten-year offer open until March 18 and then ignored their agreement. The pleading stresses that Petitioner never rejected the ten-year offer. The petition was dismissed without prejudice in October 2013, and Petitioner was given 60 days to amend the petition. On November 18, 2013, Petitioner filed an amended verified petition for relief from judgment. Again, the thrust of the amended petition appears to be that at the March 13 conference, the parties and judge reached a binding agreement to leave a ten-year offer open until March 18.

Meanwhile, in July 2013, Petitioner filed his *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court. Construing his *pro se* allegations liberally (see *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013), Petitioner Lembke's petition raises five claims:

    (1)    his pleas were unknowing or involuntary and violated state rules because
            (a) the twenty-year sentence denied him the benefit of a ten-year bargain

6

entered into on March 13, 2008; or (b) counsel induced him to plead guilty by promising that he would be sentenced to ten years;

(2) the taking of his pleas violated due process because he was inadequately admonished about the applicable term of supervised release for some charges;

(3) his sentence is "excessive";

(4) his original counsel was ineffective for not advising him before the March 13 conference that he faced up to 30 years of imprisonment on his Class 1 charge of methamphetamine manufacturing; and

(5) post-plea counsel rendered ineffective assistance by failing to include Claim 4 in his motion to withdraw the guilty pleas.

Petitioner's habeas petition was originally assigned to Judge Leinenweber. Respondent filed his answer on December 20, 2013. Petitioner's reply brief was due on February 10, 2014. Petitioner did not file a reply brief. The case was recently reassigned to this Court's docket.[3]

## II. Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to or an unreasonable application of federal law clearly established by the Supreme Court. See *Williams v. Taylor,* 529 U.S. 362, 402–03 (2000); *Warren v. Baenen,* 712 F.3d 1090, 1096 (7th Cir. 2013). In *Williams,* the Supreme Court explained that a state court's decision is

---

[3] As of the filing of Respondent's answer, Petitioner's *pro se* amended petition for relief from judgment in the circuit court was still pending in the circuit court. Since that date, the circuit court has dismissed the petition and Petitioner has appealed to the Illinois Appellate Court. Respondent previously sought extensions of time to explore the relevance of Petitioner's pending state court litigation to this habeas case. According to counsel for Respondent, he has determined that the pending state litigation does not affect the exhaustion of Petitioner's federal habeas claims because his state pleading raises only claims that either are not addressed in the habeas petition or were already adjudicated in state court. Respondent also represents that he has explored whether the state litigation affects the merits and Petitioner's procedural defaults, but concluded that these issues warrant discussion only if Petitioner argues a recognized excuse for his procedural defaults. As noted, Petitioner has not responded to Respondent's answer; further, he has not argued an excuse for his procedural defaults.

7

"contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." See *id.* at 405; see also *Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts.").

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. See *Williams,* 529 U.S. at 407; see also *Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013). "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); see also *Williams,* 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted).

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. See *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848

(1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and also must alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. See *Mulero*, 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. See *House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. See *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

### III. Analysis

#### A. Claim 1: "Guaranteed 10-Year Sentence"

To the extent that Petitioner claims that the Illinois courts violated Illinois Supreme Court Rule 402, his claim sounds exclusively in state law and thus is not cognizable on federal habeas review. See *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Steward v. Gilmore*, 80 F.3d 1205, 1214 (7th Cir. 1996) ("Violations of state law alone are, of course, not cognizable in federal habeas corpus proceedings * * * * The question of compliance with these statutory requirements is entirely distinct from the constitutional issue regarding the knowing and voluntary nature of the plea.").

Turning to Petitioner's contention that his pleas were unknowing because his lawyer promised or guaranteed him a 10-year sentence, Respondent contends that relief is barred by § 2254(d)(2), which prohibits relitigation of factual matters reasonably adjudicated by a state court. See *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Illinois Appellate Court found that Petitioner's attorney had told him that "he could not guarantee anything in regard to the sentence." Instead, the court concluded that counsel had recommended gambling for a short sentence by pleading guilty without an agreement, and the gamble did not pay off. Counsel's testimony supported this conclusion, and Petitioner offered no contrary testimony. Because federal courts have "no license" to reassess the credibility of witnesses who testified in state court (see *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (a federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Kines v. Godinez,* 7 F.3d 674, 678 (7th Cir. 1993) ("Federal courts are in no position to redetermine the credibility of witnesses observed by state trial courts."); *Murphy v. Atchison*, 2013 WL 4495652, at *12 (N.D. Ill. Aug. 19, 2013)), and because Petitioner

did not counter counsel's testimony in any event, the appellate court's decision was reasonable and Petitioner cannot clear § 2254(d)(2)'s relitigation bar. Moreover, 28 U.S.C. § 2254(e)(1) would require "clear and convincing evidence" to upset the appellate court's factual determination, and Petitioner points to no such evidence.

### B. Claims 2 and 3: Supervised-Release Admonishment and Excessive Sentence

Next, Petitioner claims that he was inadequately admonished about supervised release and that his sentence was "excessive" under Illinois law. Even construing these contentions liberally as federal claims, Petitioner abandoned both of them in his direct-appeal PLA after having unsuccessfully raised them in the appellate court. To preserve a claim for federal habeas review, a petitioner must raise it "in one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. "In Illinois, this means that a petitioner must have [ ] appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Petitioner raised these claims in his direct appeal to the Illinois Appellate Court, but he subsequently omitted them from his ensuing PLA in the Illinois Supreme Court. Because Petitioner did not raise these claims in one complete round of state court review, Petitioner has procedurally defaulted them. *Boerckel*, 526 U.S. at 845; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (failure to pursue claim on discretionary appeal to state high court on post-conviction review constitutes procedural default).

Petitioner can excuse his default by showing that (1) there is cause and prejudice for the default; or (2) the absence of federal habeas review would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has not come forward with "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

11

critical physical evidence—that was not presented at trial'" (*House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)), nor has he even attempted to establish that, in light of that evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37 (citing *Schlup*, 513 U.S. at 327). In short, in failing to address procedural default in his petition and in failing to file a reply brief, Petitioner has made no effort to excuse his default.

### C. Claim 4: Ineffective Assistance of Counsel During Plea Negotiations

Petitioner also claims that plea counsel was ineffective for not advising him before the March 2008 conference that he faced an extended term of up to thirty years of imprisonment on his Class 1 charge of methamphetamine manufacturing. According to Petitioner, had he appreciated that risk, he would have accepted the 10-year offer immediately on March 13, rather than taking the weekend to discuss it with his family. In essence, Petitioner contends that his counsel's failure to apprise him of the term of imprisonment gave the prosecutor time to withdraw the offer before Petitioner could accept it. Alternatively, Petitioner states that he would have taken the 14-year offer the following week.

Petitioner's claim is defaulted on two grounds. First, the appellate court found the claim forfeited because Petitioner failed to raise it in his motion to withdraw the guilty pleas, even though he had a new lawyer for that motion. Second, the appellate court affirmed on the alternative ground that Petitioner did not support his claims with affidavits or explain those affidavits' absence, as required by 725 ILCS 5/122-2 ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached"). The affidavit rule, well-recognized and oft-applied in Illinois (see *People v. Guest*, 655 N.E.2d 873, 883 (1995)), constitutes an adequate and independent ground for default.

See *Thompkins v. Pfister*, 698 F.3d 976, 986-87 (7th Cir. 2012) (failure to submits affidavits with post-conviction petition "is an independent and adequate state ground for rejecting" a claim), cert. denied 133 S. Ct. 1830 (2013); *Kaczmarek v. Rednour,* 627 F.3d 586, 592 (7th Cir. 2010) ("A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case."); ("A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied."). The Illinois Appellate Court plainly relied on the affidavit rule to bar Petitioner's claim that his counsel was ineffective for not advising about the possibility of a 30-year sentence. Applying the rule was especially fair here because Petitioner bore the burden of producing evidence that, had he been advised differently, there was a reasonable chance that he would have accepted a ten-year offer in March 2008. See *Missouri v. Frye*, 132 S. Ct. 1399, 1409; *Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013) (noting that the burden rests with the petitioner to show that, but for counsel's failings, the petitioner would have accepted the plea agreement).

### D. Claim 5: Post-Plea Counsel's Ineffectiveness

Petitioner's final claim is that post-plea counsel, appointed after sentencing, rendered ineffective assistance by failing to include Claim 4 in Petitioner's motion to withdraw the guilty pleas. But this claim is defaulted because it was omitted from every stage of Petitioner's post-conviction litigation. See *Boerckel*, 526 U.S. at 845 (discussing fair-presentment doctrine). And although Petitioner asserts that "fundamental fairness" should relieve him of this particular default, that is not a recognized excuse. See *Baskin v. Clark*, 956 F.2d 142, 145 (7th Cir. 1992) ("fundamental fairness" too "amorphous" a concept to excuse procedural default); *cf. McDowell*, 2013 WL 6500823, at *6-7 (although default may be excused to avoid "fundamental miscarriage of justice," that concept refers only to claims by petitioners who can prove they are actually

innocent). To the extent that Petitioner meant to assert that a fundamental miscarriage of justice would result if his default is not excused, as previously set forth, Petitioner has not come forward with "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial'" (*House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)), nor has he even attempted to establish that, in light of that evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37 (citing *Schlup*, 513 U.S. at 327).

### IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner Lembke a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell,* 537 U.S. 322, 335 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller–El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). And in cases where a district court

denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack,* 529 U.S. at 485.

Consistent with the detailed discussion above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists differ on the Court's assessment of Petitioner's claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V. Conclusion

For the reasons stated above, the Court respectfully denies Petitioner Lembke's petition for a writ of habeas corpus [4], declines to certify any issue for appeal, and directs the Clerk to enter judgment in favor of Respondent.

Dated: September 15, 2014      _____
                                                       Robert M. Dow, Jr.
                                                       United States District Judge